IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

REGINA M. PREETORIUS,             )
                                  )
            Petitioner,           )
                                  )
      v.                          )         CV 116-206
                                  )         (Formerly CR 112-204)
UNITED STATES OF AMERICA,         )
                                  )
            Respondent.           )
_____

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
_____

Petitioner, an inmate at the Federal Correctional Institution in Aliceville, Alabama, has filed with this Court a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct her sentence. For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** Petitioner's § 2255 motion be **DENIED** without an evidentiary hearing, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of Respondent.

## I. BACKGROUND

This case challenges Petitioner's convictions for mail fraud, wire fraud, and money laundering for which she was found guilty and sentenced to 280 months incarceration after a seven-day jury trial. United States v. Preetorius, CR 112-204, doc. no. 101 (Aug. 8, 2012) ("CR 112-204"). The Eleventh Circuit provided the following description of the facts based on evidence introduced at trial:

> [Petitioner] was the chief executive officer of a real estate investment firm called SDA & Associates. She guaranteed investors a return of at least 12% per year and told them that their money would be invested in, and secured by,

specific pieces of property. However, [Petitioner] instead used their money to pay personal expenses and other investors. She also switched the properties securing investments without giving investors advance notice. Eventually, SDA & Associates failed, leading to [Petitioner's] bankruptcy and causing substantial losses to its clients.

United States v. Preetorius, 626 F. App'x 920, 921 (11th Cir. 2015).

### A.     Indictment

On February 7, 2013, by superseding indictment, a grand jury in the Southern District of Georgia charged Petitioner with fourteen counts of mail and wire fraud, in violation of 18 U.S.C. §§ 1341, 1343, and 2, and three counts of money laundering, in violation of 18 U.S.C. § 1957.  (CR 112-204, doc. no. 43.)  The indictment alleged Petitioner solicited more than $1.7 million from private investors for the stated purpose of acquiring homes from distressed homeowners that Petitioner's business, SDA & Associates ("SDA"), would rent or later sell for a profit.  (Id. at 1.)  Petitioner defrauded private investors by inducing them to loan money based on falsehoods about the use of investor funds and the type of collateral that would secure their investments.  (Id.)  The indictment further alleged Petitioner defrauded distressed homeowners by using their homes in unauthorized ways, and defrauded renters who were paying to live in SDA controlled properties which fell into foreclosure.  (Id.)  Furthermore, Petitioner misapplied investor funds, renter funds, and distressed homeowner properties by converting the funds and properties for her own private use.  (Id.)  Petitioner retained attorney Charles H. Portz, III, to represent her.  (Id., doc. no. 13.)

### B.     Trial

Prior to trial, the government extended a plea offer whereby Petitioner would plead guilty to a single count and the remaining counts would be dismissed.  (Id., doc. no. 130, p. 3;

doc. no. 128, p. 26.)  Petitioner rejected the plea offer and proceeded to a seven-day jury trial before Chief United States District Judge J. Randal Hall.

### 1.    Government's Case

At trial, the government introduced witness testimony demonstrating Petitioner defrauded three classes of investors:  private investors, distressed homeowners, and renters. (Id., doc. no. 115.)

### a.    Private Investors

Private investors testified that Petitioner guaranteed their investments were safe, they would receive at least twelve percent interest paid quarterly, and their investments would be returned in full so long as thirty to sixty days written notice was given.  (Id. at 224, 232, 234, 313, 281, 286, 307, 227, 523.)  In exchange for their investments, investors were promised a first or second mortgage on a particular piece of property, and a promissory note that purported to secure the investment through SDA's assets.  (Id. at 224, 227-28, 523.)  In the event SDA was unable to pay back the loan, Petitioner promised investors they had the right to foreclose on the property.  (Id. at 232-33.)

Petitioner promised investors their funds would be used to rehabilitate or purchase pieces of property for which the investors were given a security deed.  (Id. at 227-28, 232, 331, 471, 484-85, 534, 548.)  Instead, Petitioner placed investor funds into a general account used to pay SDA's operating costs.  (Id. at 1075.)  Petitioner also used investor funds for her private use, paying for the mortgage on her own home, hairstyling appointments, groceries, flight lessons, pet grooming, her credit card, and numerus other expenses by cashing thousands in checks.  (Id. at 110, 149, 150, 154, 158, 1213-14.)  Although Petitioner promised

3

first or second mortgages, Petitioner routinely secured investments with third mortgages.  (Id. at 1220.)  When SDA struggled, Petitioner directed her bookkeeper to use new investor funds to pay interest to earlier investors.  (Id. at 106-07, 119, 149.)   Investors testified they would not have invested had they known Petitioner intended to use their funds in this manner.  (Id. at 331, 485, 491, 534, 550, 721, 765.)

In October of 2007, Petitioner stopped making mortgage payments on all properties SDA acquired.  (Id. at 110.)  To placate investors, Petitioner sent mailings assuring investors their investments were safe and late interest payments were forthcoming.  (Id. at 240, 243-44.)  Despite stopping mortgage payments, Petitioner continued to solicit new investor funds and used these funds to cash checks to herself and make interest payments to earlier investors.  (Id. at 1199-1201.)   Petitioner did not inform investors their properties were falling into foreclosure.  By the time many investors realized the properties had been foreclosed, their subordinate liens were extinguished.  (Id. at 246, 335, 731.)   After Petitioner declared bankruptcy in 2008, her remaining debts to investors were discharged, and investors were unable to recoup their investments.  (Id. at 111.)

### b.    Distressed Homeowners

Petitioner also solicited distressed homeowners who were behind on their mortgage payments.  Petitioner promised these homeowners she would stop pending foreclosures, rent the properties or sell them, and assume responsibility for mortgage payments.  (Id. at 344, 355, 361, 660, 266.)  Instead, Petitioner encumbered the properties with more debt, collected rental income for personal use, stopped paying the mortgages, and allowed the banks to foreclose on the original homeowners.  (Id. at 272, 354-55, 663-65, 791-94, 808-810.)

4

Petitioner did not inform the homeowners of the foreclosure status of their properties.  (Id. at 810, 354.)   Accordingly, many homeowners' credit scores were harmed post-foreclosure.  (Id.)

### c.  Prospective Home Buyers

Petitioner's fraud also extended to prospective home buyers who entered into lease-to-own agreements with SDA.   Petitioner convinced prospective home buyers to place a substantial down payment on the homes, collected rental income, and ultimately stopped paying the mortgages on the properties and allowed them to fall into foreclosure.  (Id. at 622, 642.)   After the banks foreclosed, the prospective home buyers were evicted and their down payments were never refunded.  (Id. at 434, 436, 611, 633, 639-46, 836, 847.)

### 2.  Petitioner's Defense

Sue Reimer, Petitioner's real estate closing attorney defended Petitioner's business model, explaining it was legitimate and helped many individuals who were "overextended" find more affordable housing options.  (Id. at 855.)   Ms. Reimer testified she serviced other businesses in the Augusta area with similar business models.  (Id. at 905.)   Ms. Reimer further testified Petitioner's business was initially successful; properties were being sold, tenants were getting loans and becoming property owners, and initial investments were readily paid back to investors.  (Id. at 971.)

Ms. Reimer admitted she fully endorsed and invested her personal funds with SDA, spoke at seminars and encouraged individuals to invest, and drafted forbearance letters for Petitioner which encouraged investors to remain patient regarding their late interest payments.  (Id. at 976, 979, 982, 984.)   Ms. Reimer also assisted Petitioner by creating land trusts,

5

promissory notes, and security deeds.  (Id. at 871, 888.)  Ms. Reimer testified she alone was responsible for filing deeds, and admitted she made several mistakes in her representation because several deeds were never filed, and other deeds were "backdated."  (Id. at 915-16, 921-26, 997.)  Ms. Reimer blamed SDA's collapse on the real estate market, which created the "perfect storm" in which Petitioner and Ms. Reimer were "powerless to do anything . . . ." (Id. at 949.)

Petitioner testified on her own behalf, describing her business model as legitimate and a result of attending numerous real estate seminars.  (Id. at 1025.)  Petitioner explained that, between 2002 and 2006, there were no foreclosures on SDA properties.  (Id. at 1047.) Petitioner detailed the impact of the market collapse on her business, which created new difficulties in negotiating short sales, restructuring notes, working out forbearances, and obtaining payoffs and reinstatements.  (Id. at 1097.)  Petitioner blamed banks for "lock[ing] up," preventing her from obtaining payoffs or reinstatements to close loans.  (Id. at 1107.)

Petitioner admitted she placed private investor funds into a general fund used to pay loans, title inspections, pest removal, and any other operational costs of the business.  (Id. at 1075.)  Petitioner explained she treated investor funds no differently than "borrowing money from the bank," in which the funds were "going into the business for the business whether it [was] rehabbing, negotiation, marketing, paying for salaries . . . and legal fees."  (Id. at 1181.) Petitioner claimed it was never her intention for properties to be foreclosed, or for any investors to lose money.  (Id. at 1235.)

Petitioner also admitted she did not inform investors she stopped making monthly mortgage payments and properties were falling into foreclosure.  (Id. at 1194.)  Petitioner

admitted she continued to solicit new investor funds after she stopped paying mortgages, and used these funds to cash checks to herself and to pay interest to other investors.  (Id. at 1199-1201.)  Petitioner admitted that after she stopped making monthly mortgage payments, she continued to use investor funds to make payments on her Mercedes.  (Id. at 1209-10.)  Petitioner blamed the banks and foreclosing law firms for the collapse of her business.  (Id. at 1236.)

At the close of testimony, Mr. Portz moved for a directed verdict pursuant to Federal Rules of Criminal Procedure 29.  (Id. at 1246.)  In denying the motion, Chief Judge Hall found the evidence was sufficient for a rational trier of fact to find guilt beyond a reasonable doubt on each count in the indictment, and allowed the counts to proceed to the jury.  (Id. at 1252.)  After deliberation, the jury found Petitioner guilty of eight of ten mail fraud counts, two of four wire fraud counts, and all three money laundering counts.  (Id., doc. no. 87.)

### C.  Presentence Investigation Report

The United States Probation Office prepared a Presentence Investigation Report ("PSI") detailing Petitioner's relevant conduct, victim loss amounts, and the advisory guideline range.  Aggregating information from SDA's investors, renters and homeowners, the PSI attributed Petitioner with a total actual loss of $1,457,374.67.  (PSI ¶¶ 15-16.)  The PSI grouped Petitioner's mail fraud and wire fraud counts together, and pursuant to U.S.S.G. § 2B1.1, Petitioner's base offense level for these counts was set at seven.  (PSI ¶ 23.)  This base offense level was:  (1) increased sixteen levels because the total loss was between $1,000,000 and $2,500,000; (2) increased two levels because the offenses involved thirty-nine victims; (3) increased two levels because the offense involved sophisticated means; (4)

increased two levels because distressed homeowners were vulnerable victims; (5) increased four levels because Petitioner was an organizer or leader of a criminal activity that involved five or more participants; (6) increased two levels because Petitioner abused a position of private trust through having homeowners sign over power of attorney that significantly facilitated the commission or concealment of the offense; (7) and increased two levels because Petitioner willfully obstructed justice by providing materially false trial testimony concerning her actions. (PSI ¶¶ 22-30.) In light of these increases, Petitioner's adjusted offense level for these counts was set at thirty-seven. (PSI ¶ 31.)

The PSI grouped Petitioner's money laundering counts separately. Pursuant to U.S.S.G. § 2S1.1(a)(1), the base offense level for these counts was set at thirty-seven. (PSI ¶ 32.) Because Petitioner was convicted of violating 18 U.S.C. § 1957, the base offense level was increased one level for an adjusted offense level of thirty-eight. (PSI ¶ 37.) Petitioner was not provided a reduction for acceptance of responsibility, and her total offense level was set at thirty-eight. (PSI ¶¶ 40-41.) Based on a total offense level of thirty-eight, and a criminal history category of I, the PSI set Petitioner's guideline imprisonment range between 235 and 293 months. (PSI ¶ 68.)

Mr. Portz raised numerous objections to the PSI, challenging various offense level enhancements. (PSI Adden.) In addition to Mr. Portz's objections, Petitioner filed her own objections in which she disputed loss amounts and continued to proclaim her innocence. (Id. at 27-53.)

8

> **D.   Sentencing**

At sentencing, Chief Judge Hall took up Mr. Portz's objections to the PSI.  (CR 112-204, doc. no. 114.)  First, Mr. Portz objected to the sixteen-level enhancement based on a total loss amount of $1,457,374.67, arguing the probation officer's loss calculation was improper because there was no independent analysis or investigation, and that his loss calculations called for a $250,000 reduction.  (Id. at 4-6.)  Chief Judge Hall overruled this objection, finding the probation officer's calculation was correct.  (Id. at 12.)

Second, Mr. Portz objected to the two-level enhancement for sophisticated means, arguing Petitioner's real estate transactions did not qualify as sophisticated.  Chief Judge Hall overruled this objection, finding Petitioner's use of real estate mortgages, seminars, charitable trusts, and assurances to worried victims qualified as sophisticated means under U.S.S.G. § 2B1.1(10)(C).  (Id. at 15-16.)  Third, Mr. Portz objected to the two-level enhancement because distressed homeowners were vulnerable victims.  Chief Judge Hall overruled this objection, finding Petitioner targeted homeowners with bad credit, and these financially-distressed individuals qualified as vulnerable victims under U.S.S.G. § 3A1.1(b).  (Id. at 26-27.)

Fourth, Mr. Portz objected to the four-level enhancement for Petitioner being the organizer or leader of a criminal activity that involved five or more participants.  (Id. at 30.)  Mr. Portz argued that although Petitioner had employees, there was no evidence Petitioner instructed them to commit any criminal activities.  (Id.) Chief Judge Hall overruled Mr. Portz's objection, finding Petitioner led at least five individuals and that the criminal activity

was otherwise extensive, qualifying for the enhancement under U.S.S.G. § 3B1.1(a).  (Id. at 36.)

Finally, Mr. Portz objected to the two-level enhancement for obstruction of justice, arguing this punished Petitioner's decision to exercise her right to testify.  (Id. at 37.)  In overruling Mr. Portz's objection, Chief Judge Hall applied the two-level enhancement because Petitioner's testimony was irreconcilable with the jury's verdict such that the Court believed Petitioner's testimony was false and constituted perjury.  (Id. at 42.)  Upon overruling Mr. Portz's objections, Chief Judge Hall adopted the PSI's advisory guideline range of 235 to 293 months imprisonment.  (Id. at 46.)

After hearing statements from victims, Chief Judge Hall allowed Petitioner to make a statement in mitigation.  However, Petitioner defiantly proclaimed she was "not going to stand up . . . and, basically, tell you what I think you want to hear.  I'm going to tell you the way things were."  (Id. at 63.)  Petitioner then proceeded to blame her "so-called victims" for breach of contract, the Augusta legal community and several judges for failing to come to her aid, foreclosing law firms and banks for failing to give her the "tools that [she] needed," the Augusta Chronicle for levying unfair accusations, and the collapse of the housing market.  (Id. at 63-70.)  Petitioner proclaimed she was "not a person to sit here and pass the blame," and that she had a "clear conscience."  (Id. at 70.)

Before imposing Petitioner's sentence, Chief Judge Hall addressed Petitioner's lack of remorse, stating, "I find it extraordinary that everyone is . . . at fault here but you.  Rarely have I seen a defendant as defiant and as lacking of conscience as to the impact that your scheme has had on the [victims] that are here today."  (Id. at 101.)  Chief Judge Hall likened

10

Petitioner to a "land pirate . . . who sailed under the flag of S.D.A. . . . and pillaged and looted from people that were facing, in many cases, serious financial situations and from people who had retired."  (Id. at 103.)  Chief Judge Hall reflected that Petitioner's conduct was "without a doubt, one of the most disgraceful schemes that [he had] seen as a judge or, prior to that, as a lawyer . . . ."  (Id.)   Finding Petitioner's continued denial of any responsibility for her wrongdoing significant, Chief Judge Hall sentenced Petitioner to 280 months imprisonment, three years supervised release, $1,457,374.67 restitution, and a $1,300.00 special assessment. (Id. at 105; doc. no. 101.)

**E.      Appeal**

Petitioner appealed to the Eleventh Circuit and argued:  (1) there was insufficient evidence to support her convictions because the government failed to prove she intentionally defrauded her clients beyond a reasonable doubt; (2) the district court erred by imposing a four-level role enhancement under U.S.S.G. § 3B1.1(a); and (3) her within-guidelines sentence was substantively unreasonable.  Preetorius, 626 F. App'x at 920-22.  In affirming her convictions, the Eleventh Circuit held a rational jury was "entitled to disbelieve [Petitioner's] testimony and conclude that she intended to defraud her clients," she "led and organized an extensive criminal scheme," and her sentence was substantively reasonable.  Id. at 922-23.

**F.      Habeas Petition**

Petitioner executed the current § 2255 motion on December 12, 2016.  (Doc. no. 1, pp. 12, 74.)  In her § 2255 motion, Petitioner alleges the following grounds of error:

11

1.  Counsel affirmatively misrepresented his experience in handling federal criminal defense matters and failed to disclose his inexperience.

2.  Counsel was ineffective for failing to properly use and introduce at trial, numerous documents provided by Petitioner.

3.  Counsel was ineffective for failing to argue that Petitioner's business was legitimate but failed because of economic trends that were unforeseeable.

4.  Counsel was ineffective for failing to argue the theory that Petitioner's real estate attorneys were responsible for negligence that exposed her to accusations of criminal conduct.

5.  Counsel was ineffective in pre-trial negotiations by failing to counsel Petitioner into pleading guilty, and failed to explain the consequences of proceeding to trial.

6.  Counsel was ineffective for failing to properly investigate and present the evidence that Petitioner provided him.

7.  Counsel was ineffective for failing to counsel Petitioner against testifying on her own behalf, which subjected her to obstruction of justice charges.  Counsel also failed to call expert witnesses.

8.  Counsel was ineffective for failing to properly cross examine or impeach government witnesses.

9.  Counsel did not adequately prepare for sentencing, and failed to challenge the probation officer's loss calculations.  Counsel also failed to present character witnesses in mitigation.

(See generally doc. no. 1.)

## II.   DISCUSSION

### A.   There Is No Need For an Evidentiary Hearing.

Section 2255 does not require that the Court hold an evidentiary hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief. . . ."  28 U.S.C. § 2255(b).  "A hearing is not required on patently frivolous claims or those

12

which are based upon unsupported generalizations.  Nor is a hearing required where the petitioner's allegations are affirmatively contradicted in the record." Holmes v. United States, 876 F.2d 1545, 1553 (11th Cir. 1989) (citation omitted).  Moreover, a petitioner is not entitled to an evidentiary hearing where she asserts "merely conclusory allegations unsupported by specifics or contentions that in the face of the record are wholly incredible." Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991) (citation omitted); see also Lynn v. United States, 365 F.3d 1225, 1238-39 (11th Cir. 2004).  While ineffective assistance of counsel claims often require a hearing for development of an adequate record, an evidentiary hearing is not required every time such a claim is raised.  Vick v. United States, 730 F.2d 707, 708 (11th Cir. 1984).  Because Petitioner's claims lack merit as a matter of law, or are otherwise affirmatively contradicted by the record, no evidentiary hearing is necessary, and Petitioner's motion should be denied.

**B.     The Standard for Ineffective Assistance of Counsel Under Strickland.**

Ineffective assistance of counsel claims are subject to the two-part test enunciated in Strickland v. Washington, 466 U.S. 668 (1984).  See Massaro v. United States, 538 U.S. 500, 505 (2003).  Petitioner must show that counsel was constitutionally ineffective under the two prongs of Strickland by proving defense counsel's performance was deficient and prejudicial.  Under the first prong, Petitioner must show that "counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688.  In this regard, "[a] petitioner must overcome a strong presumption of competence, and the court must give significant deference to the attorney's decisions." Hagins v. United States, 267 F.3d 1202, 1204-05 (11th Cir. 2001).

13

Strategic decisions are entitled to a "heavy measure of deference." Strickland, 466 U.S. at 691.  Indeed, "strategic choices are 'virtually unchallengeable.'" Provenzano v. Singletary, 148 F.3d 1327, 1332 (11th Cir. 1998) (citing Strickland, 466 U.S. at 690).  "[A] court should be highly deferential to those choices made by defense counsel in the conduct of a trial that are arguably dictated by a reasonable trial strategy." Devier v. Zant, 3 F.3d 1445, 1450 (11th Cir. 1993).  To show that an attorney's choice of strategy is unreasonable, a petitioner must show that no competent counsel would have made such a choice. Strickland, 466 U.S. at 690.

Thus, a petitioner "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Id.  "The relevant question is not what actually motivated counsel, but what reasonably could have motivated counsel." Gordon v. United States, 518 F.3d 1291, 1301 (11th Cir. 2008).  "Given the strong presumption in favor of competence, the petitioner's burden of persuasion – though the presumption is not insurmountable – is a heavy one." Fugate v. Head, 261 F.3d 1206, 1217 (11th Cir. 2001) (citation omitted).  "The test has nothing to do with what the best lawyers would have done.  Nor is the test even what most good lawyers would have done.  We ask only whether some reasonable lawyer . . . could have acted, in the circumstances, as defense counsel acted . . . ." Ward v. Hall, 592 F.3d 1144, 1164 (11th Cir. 2010) (citing Waters v. Thomas, 46 F.3d 1506, 1512 (11th Cir. 1995) (*en banc*)).

A court, however, "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . .  If it is easier to dispose of an ineffectiveness claim on the ground of lack of

14

sufficient prejudice, which we expect will often be so, that course should be followed." Strickland, 466 U.S. at 697; see Brooks v. Comm'r, Ala. Dep't of Corr., 719 F.3d 1292, 1301 (11th Cir. 2013).  Under the prejudice prong of Strickland, a petitioner must show "that there 'is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.'"  Brooks, 719 F.3d at 1300 (quoting Strickland, 466 U.S. at 694).  As the Eleventh Circuit has ruled, a petitioner must affirmatively prove prejudice that would undermine the results of the proceedings because "attorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial.  That the errors had some conceivable effect on the outcome of the proceeding is insufficient to show prejudice."  Butcher v. United States, 368 F.3d 1290, 1293 (11th Cir. 2004) (citations and internal quotations omitted).

**C.     Petitioner Fails to Establish Ineffective Assistance of Counsel in Grounds One Through Nine.**

**1.     Ground One**

In Ground One, Petitioner argues her retained attorney Charles H. Portz, III, misrepresented his experience in handling federal criminal defense matters, claiming he was experienced in federal criminal defense when he was in fact inexperienced, and had only handled two prior federal criminal cases.  (Doc. no. 1, p. 19.)  Petitioner claims Mr. Portz's inexperience resulted in ineffective assistance because he was inadequately prepared, did not properly cross examine witnesses or present rebuttal witnesses, and was unable to explain to

15

the Court and jury that Petitioner's business failed as a result of "unforeseen business reversals." (See id. at 20.)

Counsel's conduct is presumed reasonable, and for the petitioner to show counsel performed unreasonably, the petitioner must establish no competent counsel would have taken the action her counsel took. Chandler v. United States, 218 F.3d 1305, 1315 (11th Cir. 2000). Counsel that is merely inexperienced is not automatically ineffective. See United States v. Cronic, 466 U.S. 648, 665 (1984) (stating conclusion that counsel provided reasonably competent defense "is not undermined by the fact that respondent's lawyer was young, that his principal practice was in real estate, or that this was his first jury trial"). Furthermore, the complexity of a case is not determinative of counsel's incompetency. See id. at 663 ("Neither the period of time that the Government spent investigating the case, nor the number of documents that its agents reviewed during that investigation, is necessarily relevant to the question whether a competent lawyer could prepare to defend the case").

Here, Petitioner was free to choose her attorney, and has not demonstrated Mr. Portz's alleged misrepresentation of his criminal trial experience resulted in ineffective assistance. See Blackwell v. United States, No. CIV. 2:08-CV-00168, 2010 WL 1257872, at *3 (S.D. Ohio Mar. 30, 2010) (holding petitioner was free to choose attorney, and petitioner did not demonstrate retained counsel's alleged misrepresentations regarding prior experience resulted in ineffective assistance). Even if Mr. Portz was less experienced than Petitioner believed or desired, she has not demonstrated Mr. Portz rendered deficient performance.

Petitioner asserts vaguely that Mr. Portz's inexperience led to inadequate preparation and cross examination, and an unwillingness to call expert and fact witnesses to counter the

government's theories.  (Doc. no. 1, p. 19.)  However, these conclusory allegations as to Mr. Portz's alleged shortcomings are woefully insufficient to state an ineffective assistance claim. Wilson v. United States, 962 F.2d 996, 998 (11th Cir. 1992) ("Conclusory allegations of ineffective assistance are insufficient."); Pio v. United States, No. 13-23666-CIV, 2014 WL 4384314, at *3 (S.D. Fla. Sept. 3, 2014) (finding petitioner did not meet pleading requirements under § 2255 by merely alleging conclusory allegations unsupported by specifics); Martel v. United States, No. 16-CV-20130-SEITZ, 2017 WL 1289315, at *7 (S.D. Fla. Feb. 27, 2017), report and recommendation adopted, No. 16-20130-CIV, 2017 WL 1292927 (S.D. Fla. Apr. 5, 2017) ("Vague, conclusory, speculative and unsupported claims cannot support relief for ineffective assistance of counsel.").

Petitioner's conclusory allegations are also contrary to the record.  Mr. Portz cross examined government witnesses and prepared and presented testimony from Petitioner and defense witness Ms. Reimer.  (See generally CR 112-204, doc. no. 115.)  Mr. Portz also argued Petitioner's business failed due to unforeseeable circumstances, blaming SDA's collapse on the banking industry.  (Id. at 86.)  Mr. Portz routinely argued that Petitioner had no intent to commit the crimes of which she was accused, and that her situation was merely due to the unforeseeable failure of SDA due to forces beyond Petitioner's control.  (Id. at 87, 89.)  Thus, contrary to Petitioner's conclusory allegations, Mr. Portz did not render deficient performance and Petitioner has not demonstrated ineffective assistance as to her Ground One claim.

### 2.  Grounds Two and Six

In Grounds Two and Six, Petitioner claims she provided Mr. Portz with several binders of unspecified documents that showed the complexity of her business and her successful completion of many transactions before the recession, and Mr. Portz failed to introduce many of the documents at trial.  (Doc. no. 1, p. 21.)  Petitioner claims these unspecified documents prove her business was legitimate, and Mr. Portz's failure to use the documents demonstrates his prejudicial failure to investigate.  (Id. at 21, 27.)  Although Petitioner couches her claims in terms of ineffective assistance, she is merely attempting to challenge the sufficiency of evidence to sustain her convictions, a claim the Eleventh Circuit decided against her on direct appeal:

> We first consider [Petitioner's] argument that there was insufficient evidence to support her convictions . . . [Petitioner] personally guaranteed the safety of her investors' money, she used their investments for personal expenses and directed SDA & Associates's bookkeeper to pay investors with other investors' money.  Further, even after she had run out of money . . . she reassured investors that their money was safe and "well secured." Based on this evidence, a rational jury was entitled to . . . conclude that she intended to defraud her clients.  We affirm her convictions.

Preetorius, 626 F. App'x at 921.  As the Eleventh Circuit rejected Petitioner's sufficiency of the evidence claims on direct appeal, they will not be relitigated in these proceedings, and therefore Grounds Two and Six provide no basis for relief.  United States v. Nyhuis, 211 F.3d 1340, 1343 (11th Cir. 2000) ("Once a matter has been decided adversely to a defendant on direct appeal it cannot be re-litigated in a collateral attack under section 2255."); Ugarte-Veizaga v. United States, 452 F.2d 1194, 1195 (5th Cir. 1972) ("Section 2255 motion cannot

be used in lieu of an appeal on the merits nor will issues disposed of on a previous appeal be reviewed again on such a motion.").

Even construing Petitioner's challenges to the sufficiency of the evidence as ineffective assistance claims, Petitioner has not demonstrated deficient performance or prejudice.  "Among the duties owed by minimally competent counsel is the duty to make reasonable investigations or to make a reasonable decision that makes said investigations unnecessary."  Blankenship v. Hall, 542 F.3d 1253, 1273 (11th Cir. 2008).  Strategic choices made after thorough investigation are virtually unchallengeable, and strategic choices made after "less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation."  Strickland, 466 U.S. at 690-91.  Counsel's investigation does not fall below Strickland's standard so long as "a reasonable lawyer could have decided, under the circumstances, not to investigate . . . particular evidence."  Payne v. Allen, 539 F.3d 1297, 1316 (11th Cir. 2008).  "[L]awyers do not enjoy the benefit of endless time, energy or financial resources."  Rogers v. Zant, 13 F.3d 384, 387 (11th Cir. 1994).  Counsel is not required to "pursue every path until it bears fruit or until all hope withers."  Williams v. Head, 185 F.3d 1223, 1237 (11th Cir. 1999).

Petitioner has not demonstrated that Mr. Portz's strategic decision to limit the amount of documents introduced at trial resulted in prejudice.  Petitioner has neither described these documents nor explained how they would have affected the outcome of her trial.  (See doc. no. 1, pp. 20-21, 26-28.)  Petitioner merely alleges these documents would have demonstrated the complexity of her business, and shown her business was successful before the financial crisis.  (Id. at 21.)  The jury was well aware of Petitioner's business model and that her

19

business was initially successful.  The record demonstrates Mr. Portz introduced hours of testimony from Petitioner and Ms. Reimer in which they testified Petitioner's business was legitimate but failed due to unforeseen market factors.  (CR 112-204, doc. no. 115, pp. 952, 971, 1025, 1047, 1097.)  Despite this testimony, the jury still found Petitioner guilty.  Given the overwhelming amount of evidence of Petitioner's fraud, she cannot demonstrate Mr. Portz's strategic decision to introduce some documents as opposed to others prejudiced the outcome of her trial.  Accordingly, Petitioner is not entitled to relief on her Grounds Two and Six claims.

### 3.  Ground Three

In Ground Three, Petitioner argues Mr. Portz was ineffective for failing to argue her business was legitimate but failed due to unforeseeable economic factors.  (Doc. no. 1, p. 21.) Again, Petitioner attempts to challenge the sufficiency of evidence used to convict her, a claim expressly rejected by the Eleventh Circuit on direct appeal.  Preetorius, 626 F. App'x at 921.  Regardless, Petitioner's argument misstates the record and is insufficient to show deficient performance or prejudice.

Contrary to Petitioner's claims, Mr. Portz presented to the jury numerous times the argument that Petitioner's business failed because of unforeseeable economic factors.  In opening argument, Mr. Portz lauded Petitioner's business as one that "began in 2003 with many, many successful cases, many successful transactions."  (CR 112-204, doc. no. 115, pp. 85.)  Mr. Portz lamented the 2007 banking crisis, blamed the banks for Petitioner's troubles, and argued Petitioner's failed business was not a criminal enterprise.  (Id. at 85-89.)  To legitimize Petitioner's business, Mr. Portz introduced documents showing SDA's successful

sales between 2003 and 2007, and contrasted these sales with foreclosures from 2007-2008. (Id. doc. no. 85, p. 4.)

Ms. Reimer testified SDA was a legitimate business that collapsed due to "the perfect storm" of the market downturn and credit freeze, causing SDA's collapse.  (Id., doc. no. 115, pp. 949.)  Thus, contrary to Petitioner's claims, Mr. Portz presented this defense to the jury, which rejected it in finding Petitioner guilty.   Accordingly, Petitioner cannot demonstrate prejudice.

### 4.    Ground Four

In Ground Four, Petitioner argues Mr. Portz was ineffective for failing to argue the Reimer Law Firm was negligent in filing "deeds, releases, and other financial instruments," resulting in the appearance that Petitioner and SDA were operating illegally.  (Doc. no. 1, p. 24.)  In support, Petitioner attaches a list of all properties in which deeds were never filed, or were filed late.  (Id. at 58-68.)

First, Mr. Portz made the strategic decision to present Ms. Reimer as a defense witness who testified favorably on Petitioner's behalf, instead of arguing Ms. Reimer's professional lapses were responsible for Petitioner's predicament or an appearance of impropriety in SDA's business operations.  Because Petitioner cannot demonstrate this strategic decision was so patently unreasonable no competent attorney would have chosen it, Mr. Portz was not deficient.

Furthermore, Petitioner cannot demonstrate prejudice because, contrary to her claims, Mr. Portz elicited admissions by Ms. Reimer that she failed to file or record documents in a timely manner, backdated documents, and that it was her sole responsibility to ensure

documents were properly filed and recorded.  (CR 112-204, doc. no. 115, pp. 915-16, 921-26, 997.)  Ms. Reimer fully admitted her professional errors caused the financial losses of at least one client, and that there was nothing SDA or Petitioner could have or should have done differently.  (Id. at 916.)  The jury was well aware Ms. Reimer's professional errors resulted in an appearance of impropriety in SDA's business practices.

However, Ms. Reimer was not on trial, her professional errors paled in comparison to the sheer volume of Petitioner's fraud, and there is no reasonable probability of a different outcome had Mr. Portz argued Ms. Reimer's errors were responsible for exposing her to accusations of criminal conduct.

### 5.    Ground Five

In Ground Five, Petitioner alleges Mr. Portz was ineffective for failing to convince her to accept the plea deal offered by the government whereby Petitioner would plead guilty to one count, and the government would recommend a five-year prison term.  (Doc. no. 1, p. 24.) Petitioner alleges Mr. Portz did not adequately explain the advantages and disadvantages of the guilty plea, nor did he advise Petitioner of the likely sentence she faced if convicted.  (Id. at 25.)

The Sixth Amendment right to counsel extends to the plea-bargaining context.  Lafler v. Cooper, 566 U.S. 156, 162 (2012).  Counsel is obligated to consult with his client on important decisions and keep the client informed of important developments in the course of the prosecution.  Diaz v. United States, 930 F.2d 832, 834 (11th Cir. 1991).  This includes the duty to communicate formal plea offers from the prosecution.  Missouri v. Frye, 566 U.S. 133, 133 (2012).  In order to show prejudice under Strickland in the context of a rejected or

failed plea bargain, a petitioner must show a reasonable probability that, but for counsel's ineffectiveness:

> (1) the plea offer would have been presented to the court (i.e., the defendant would have accepted the plea deal and the prosecution would not have withdrawn it in light of intervening circumstances); (2) the court would have accepted its terms; and (3) the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

Osley v. United States, 751 F.3d 1214, 1221 (11th Cir. 2014) (citing Lafler, 566 U.S. at 156).

Petitioner fails to demonstrate Mr. Portz was ineffective because she cannot demonstrate she would have accepted any plea offer. See Olsey, 751 F.3d at 1221. Petitioner's hindsight, self-serving contention concerning her desire to plead before trial, without more, is insufficient to establish that she would have accepted the plea offer. See Guyton v. United States, No. CR 410-093, 2013 WL 1808761, at *2 (S.D. Ga. Apr. 29, 2013), report and recommendation adopted, No. CR 410-093, 2015 WL 5168484 (S.D. Ga. Sept. 2, 2015). Indeed, Petitioner's sworn protestations of innocence both during and after trial definitively show she would not have accepted any plea offer. See Olsey, 751 F.3d at 1224 (finding repeated claims of innocence severely undermined petitioner's after-conviction assertion he would have taken plea agreement); Oliver v. United States, 292 F. App'x 886, 887–88 (11th Cir.2008) (per curiam) (claiming innocence throughout trial and sentencing undermines claim petitioner would have accepted plea agreement); Banda v. United States, No. CR 109-133, 2014 WL 3363033, at *6 (S.D. Ga. July 9, 2014) (finding petitioner failed to demonstrate prejudice where he repeatedly proclaimed innocence at trial and after trial).

23

At trial, Petitioner took the stand and testified she never intended to commit fraud and blamed banks, foreclosing law firms, and the market collapse for her predicament.  (CR 112-204, doc. no. 115, pp. 1234-35.)   Petitioner maintained her innocence and claimed she "always told the truth."  (Id. at 1235.)  Petitioner continued to claim her innocence after trial. In her reply to the PSI's factual allegations, Petitioner stated she had no intention of defrauding her clients, and again blamed banks, the prosecution, and the Augusta Chronicle. (PSI Adden., p. 27.)   When Chief Judge Hall gave Petitioner the opportunity to present statements in mitigation at sentencing, Petitioner continued her defiant proclamations of innocence, claiming she was "not going to stand up . . . [and] tell you what I think you want to hear.  I'm going to tell you the way things were."  (CR 112-204, doc. no. 114, p. 63.) Petitioner then proceeded to blame the Augusta Chronicle, foreclosing law firms, the United States Bankruptcy Court, James Thompson, uncooperative buyers and tenants, the FBI, Judge Allen, the United States Attorney's Office, and her "so-called victims," never admitting any fault or wrongdoing on her part.  Petitioner defiantly proclaimed she had a "clear conscience." (Id. at 70, 101.)

Accordingly, Petitioner cannot demonstrate prejudice on her claim that Mr. Portz failed to adequately explain the benefits of the plea offer, or the consequences of proceeding to trial.  Petitioner's continued proclamations of innocence at trial and at sentencing are wholly incompatible with her argument she would have accepted a plea deal.   Because Petitioner would not have accepted a plea offer, she cannot demonstrate ineffective assistance. See Osley, 751 F.3d at 1221.

### 6. Ground Seven

In Ground Seven, Petitioner argues Mr. Portz was ineffective for failing to counsel her against testifying, and failed to inform her of the possible consequences of testifying which included an obstruction of justice enhancement.   (Doc. no. 1, pp. 28-29.)   Petitioner also alleges Mr. Portz was ineffective for failing to call several expert and rebuttal witnesses.

A criminal defendant has the fundamental constitutional right to testify on her own behalf at trial.   The testimony of a criminal defendant at her own trial is unique and inherently significant.   "The most persuasive counsel may not be able to speak for a defendant as the defendant himself might, with halting eloquence, speak for himself."   Green v. United States, 365 U.S. 301, 304 (1961).   The testimony of the defendant herself is often considered of prime importance.   United States v. Walker, 772 F.2d 1172, 1179 (5th Cir. 1985).   Ultimately, the decision whether to testify belongs to the defendant, not counsel.   United States v. Teague, 953 F.2d 1525, 1534 (11th Cir. 1992).

Here, to the extent Petitioner is arguing Mr. Portz should not have called her to testify on her own behalf, Petitioner cannot demonstrate ineffective assistance because the decision whether to testify was ultimately hers.   See Teague, 953 F.2d at 1534.   Furthermore, Mr. Portz did not render deficient performance by adopting the strategy of having Petitioner testify. Petitioner's testimony was critical to her defense because only Petitioner could testify she did not possess the requisite intent to commit fraud.   Indeed, Petitioner testified it was never her intent for anyone to lose money, to have been evicted, or homes to be foreclosed.   (CR 112-204, doc. no. 115, p. 1234.)   Mr. Portz was not deficient because his strategic decision to

introduce Petitioner's testimony was not so patently unreasonable no competent attorney would have chosen it.

Secondly, Petitioner cannot demonstrate prejudice.  The government presented overwhelming evidence of Petitioner's guilt through hours of testimony by multiple witnesses, and countless exhibits evidencing her fraud.  Petitioner's testimony was critical to her defense, and in light of the overwhelming weight of the government's evidence, Petitioner has not demonstrated a reasonable probability that the jury would have rejected the government's case and acquitted her had she not testified.  See Cleckler v. United States, No. 2:08-CV-397-WKW, 2009 WL 1507538, at *12 (M.D. Ala. May 29, 2009), aff'd, 410 F. App'x 279 (11th Cir. 2011) (finding petitioner failed to demonstrate prejudice because she did not show jury would have rejected government's evidence and acquitted petitioner based on absence of his testimony).

Furthermore, Mr. Portz was not ineffective for allegedly failing to inform Petitioner that testifying untruthfully could lead to a sentence enhancement for obstruction of justice. Prior to testifying, Petitioner took an oath to tell the truth.  (CR 112-204, doc. no. 115, p. 1016.)  Instead of telling the truth, Petitioner provided false testimony and committed perjury. (Id., doc. no. 114, p. 42.)  Even presuming Mr. Portz did not advise Petitioner she would be subject to a sentence enhancement for obstruction of justice if she testified untruthfully, such conduct is not ineffective assistance.  See Corley v. United States, No. CIV.A. 09-0080-WS-C, 2009 WL 4799535, at *12 (S.D. Ala. Dec. 1, 2009), aff'd, 406 F. App'x 342 (11th Cir. 2010) (finding counsel was not ineffective for failing to advise client he could be penalized for testifying falsely); Clecker, 2009 WL 1507538 at *13 (finding counsel was not

constitutionally ineffective for failing to advise Petitioner he was subject to penalty for false testimony).

Finally, Petitioner alleges Mr. Portz failed to call "Lynn Szymoniak . . . Phil Gobierowski, Lou Brown, Ron LeGrands, Allen Cogill, and Attorney Simone Bloom, who could have testified to a myriad of conditions infecting the Georgia real estate market, as well as the systemic breakdown in the mortgage markets . . . ." (Doc. no. 1, pp. 28-29.)  First, Mr. Portz's decision of which witnesses to call is entitled to deference.  See Evans v. Sec'y, Florida Dep't of Corr., 699 F.3d 1249, 1268 (11th Cir. 2012) ("[W]e add the point that which witnesses, if any, to call, and when to call them, is the epitome of a strategic decision, and it is one that we will seldom, if ever, second guess.").

More significantly, Petitioner's speculation about what these witnesses might have said is not enough to establish prejudice.  Aldrich v. Wainwright, 777 F.2d 630, 636 (11th Cir. 1985) ("Speculation is insufficient to carry the burden of a habeas corpus petitioner as to what evidence could have been revealed by further investigation."); Jackson v. Sec'y, Dep't of Corr., No. 8:11-CV-445-T-30EAJ, 2012 WL 1025390, at *9–10 (M.D. Fla. Mar. 27, 2012); See also Grisby v. Blodgett, 130 F.3d 365, 373 (9th Cir. 1997) ("Speculation about what an expert could have said is not enough to establish prejudice.").  Mr. Portz introduced evidence of the market and economic conditions that affected Petitioner's business and any additional evidence would not have likely changed the trial outcome.  In sum, Petitioner has failed to demonstrate Mr. Portz rendered ineffective assistance, and she is not entitled to relief on her Ground Seven claims.

7.      **Ground Eight**

In Ground Eight, Petitioner claims Mr. Portz was ineffective for:  failing to impeach numerous government witnesses over inconsistent statements or criminal backgrounds; failing to cross-examine government witnesses over allegedly false testimony; and making errant remarks during cross examination.  (Doc. no. 1, pp. 30-32.)  Again, although couched in terms of ineffective assistance, Petitioner attempts re-litigate the sufficiency of the government's evidence, which the Eleventh Circuit found sufficient to sustain Petitioner's convictions.  Preetorius, 626 F. App'x at 921-22.  Regardless, none of Petitioner's allegations demonstrate Mr. Portz was ineffective and she has failed to establish prejudice.

The decision to cross-examine a witness and the manner in which the cross-examination is conducted are tactical decisions "well within the discretion of a defense attorney."  Fugate v. Head, 261 F.3d 1206, 1219 (11th Cir.2001) (quoting Messer v. Kemp, 760 F.2d 1080, 1090 (11th Cir.1985)).  Merely because other testimony might have been elicited is not enough to establish ineffective assistance.  Id. at 1218 (citing Waters v. Thomas, 46 F.3d 1506, 1514 (11th Cir. 1995)).  The claim counsel should have cross-examined further on an inconsequential matter does not establish deficient performance.  See Johnson v. Alabama, 256 F.3d 1156, 1186 (11th Cir. 2001) (finding inconsistencies on inconsequential matters did not result in prejudice); Mills v. Singletary, 63 F.3d 999, 1021 n. 36 (11th Cir.1995) (finding claim counsel should have cross-examined further on inconsequential matter did not establish ineffective assistance).  To prove prejudice in this context, a petitioner is required to show "specific instance[s] where cross-examination

arguably could have affected the outcome of either the guilt or sentencing phase of the trial." Fugate, 261 F.3d at 1219.

Petitioner alleges Mr. Portz was aware that government witnesses Arthur Kent, Nadine Francis, Lathanial Harris, and James Thompson had criminal records, but failed to use their prior criminal convictions to impeach their testimony.  (Doc. no. 1, p. 30.)  First, Petitioner's vague and conclusory allegation that Mr. Portz failed to impeach these witnesses based on unspecified prior criminal convictions cannot form the basis for habeas relief.  The Federal Rules of Evidence provide for witness impeachment by prior criminal conviction in limited circumstances, based on the nature, circumstances, and severity of the prior offense.  See Fed. R. Evid. 609.  Although Petitioner claims these witnesses had criminal records, she fails to provide any specifics as to any prior conviction, and her conclusory allegations do not warrant relief.  See Ross v. Estelle, 694 F.2d 1008, 1011-12 (5th Cir. 1983) ("Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his pro se petition . . . unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value."); Pio, 2014 WL 4384314 (finding petitioner did not meet pleading requirements of § 2255 by alleging conclusory allegations bereft of specifics); Martel, 2017 WL 1289315 at *7 (finding vague and speculative claims did not demonstrate ineffective assistance).

Secondly, even if Mr. Portz was aware witnesses had prior convictions that could have been introduced as impeachment evidence, Petitioner cannot overcome the presumption that Mr. Portz's decision not to challenge these witnesses with prior convictions was sound trial strategy.  See Jones v. Woodford, No. CIV. 03CV1463J (RBB), 2008 WL 505230, at *21

29

(S.D. Cal. Feb. 25, 2008) (finding counsel was not ineffective by not introducing victim's criminal record as impeachment evidence). Indeed, jurors were most likely sympathetic to these witnesses, given they were victims of Petitioner's fraud. For this reason, cross-examining these witnesses about prior, unrelated criminal convictions could have risked alienating jurors who might have viewed the questioning as an unfair attack on the victims. Because Petitioner has failed to demonstrate no competent counsel would have made the strategic decision not to impeach witnesses based on unrelated criminal records, she has not demonstrated ineffective assistance.

More importantly, Petitioner cannot show prejudice because there is no reasonable probability that any additional impeachment with prior criminal records would have manufactured reasonable doubt in the juror's minds. At trial, Mr. Portz diligently cross-examined these witnesses and impeached their testimony, establishing these witnesses knowingly and voluntarily engaged in business transactions with Petitioner, and either obtained some benefit or were at fault. For example, Mr. Portz elicited testimony from Mr. Thompson, one of Petitioner's former employees, who admitted receipt of $50,000 from two closing transactions, and Mr. Harris, who admitted he was more than $2,000 behind in rent payments and failed to obtain a mortgage to purchase the property he was renting. (CR 112-204, doc. no. 115, pp. 165, 588, 591.)

Further impeachment of Petitioner's victims over unrelated criminal records would have had no effect on the outcome of the trial in light of the overwhelming evidence of Petitioner's guilt, and Petitioner has failed to show prejudice. See United States v. Orr, 636 F.3d 944, 951–54 (8th Cir. 2011) (denying relief on claim involving counsel's failure to

impeach prosecution witness because, even though counsel could have "eroded [her] credibility in the jury's eyes by impeaching [her]," in view of the other evidence of guilt "there is not a reasonable probability that [the] impeachment would have manufactured reasonable doubt in the jurors' minds"); Moore v. Marr, 254 F.3d 1235, 1237–38, 1240–41 (10th Cir. 2001) (denying habeas relief on claim involving "counsel's failure to impeach a key prosecution witness" because even if "[the witness] had been impeached we cannot conclude that the outcome would have been different").

Petitioner also alleges Mr. Portz was ineffective for failing to impeach government witnesses Ms. Barbara Ring, Ms. April Avent, Mr. Arthur Kent, Mr. Eddie Cheeks, Ms. Valerie Whittle Johnson, Mr. Daryl Johnson, Ms. Nadine Francis, and Ms. Barbara Francis, alleging these witnesses presented false testimony concerning their dealings with Petitioner or SDA.  (Doc. no. 1, pp. 31-32.)  Petitioner faults Mr. Portz for failing to impeach these witnesses with prior inconsistent statements and for failing to challenge allegedly false statements.  (Id.)  None of Petitioner's conclusory claims demonstrate Mr. Portz was ineffective.

Petitioner alleges Mr. Portz was ineffective for failing to impeach government witness Ms. Barbara Ring, a private investor, with her allegedly false testimony that she wired money to SDA when it went to the Reimer law firm, and testimony that her agreement with SDA did not allow her the option of electing money instead of property.  (Id. at 30-31.)  Petitioner misstates the record as it conclusively establishes Ms. Ring testified she never personally gave money to Petitioner and wired money to the Reimer law firm.  (CR 112-204, doc. no. 115, p. 532.)  Petitioner's remaining allegations concerning Ms. Ring's allegedly false statements fail

to establish prejudice because any additional cross-examination would not have arguably affected the outcome of trial.

Mr. Portz's cross-examination highlighted numerous issues with Ms. Ring's testimony, focusing on her unfamiliarity with her finances and ignorance as to how her investments would be used. (Id. at 558-65.) Mr. Portz strategically decided to attack certain aspects of Ms. Ring's testimony at the expense of others, and whether he could have been more effective had he more thoroughly impeached Ms. Ring requires the inappropriate use of hindsight. See White v. Singletary, 972 F.2d 1218, 1220 (11th Cir.1992) ("Courts should at the start presume effectiveness and should always avoid second-guessing with the benefit of hindsight."); Robinson v. Sec'y, Dep't of Corr., No. 5:10-CV-193-RS-GRJ, 2013 WL 5345348, at *10 (N.D. Fla. Sept. 24, 2013) ("Indeed, counsel's cross examination and trial strategies are presumed reasonable."). Because Petitioner has not shown Mr. Portz's cross-examination strategy was so unreasonable no competent counsel would have chosen it, she has not established ineffective assistance.

Petitioner alleges Mr. Portz was ineffective during his cross-examination of Ms. Avent, a prospective homebuyer, by "incorrectly referring to SDA requesting an additional deposit, instead of a higher payment." (Doc. no. 1, p. 31.) The record establishes Mr. Portz thoroughly cross examined Ms. Avent, directing the jury to numerous misstatements. For example, although Ms. Avent testified Petitioner never offered to owner-finance her property, Mr. Portz presented evidence to the contrary. (CR 112-204, doc. no. 115, p. 532.) Mr. Portz also highlighted Ms. Avent's decision not to seek a mortgage in order to purchase the property she was renting. Whether Mr. Portz made a misstatement by incorrectly referring to

32

an additional deposit instead of a higher payment was inconsequential and had little probative value.  Accordingly, Mr. Portz was not ineffective, and Petitioner cannot show prejudice from this alleged misstatement.  See Johnson, 256 F.3d at 1186; Mills v. Singletary, 63 F.3d at 1021 n. 36.

Petitioner argues Mr. Portz was ineffective for failing to challenge private investor Mr. Kent's statements that Petitioner made personal guarantees for his investment, and that his SDA paperwork stated his money would only be used for the property in which he invested. (Doc. no. 1, p. 31.)  On cross-examination, Mr. Portz challenged Mr. Kent's testimony, analogizing his losses to stock or bond market losses, and pointing out Mr. Kent did not diligently manage his investments.  (CR 112-204, doc. no. 115, p. 251.)  Mr. Portz's cross-examination strategy is entitled to deference, and additional impeachment based on allegedly false statements would not have altered the outcome of trial in the face of Petitioner's overwhelming guilt.  Because Petitioner has not shown no competent counsel would have adopted the same cross-examination strategy, she has not established ineffective assistance.

Finally, Petitioner's conclusory allegation that Mr. Portz failed to "properly cross-examine" or point out "falsehoods" in the testimonies of Eddie Cheeks, Valerie Whittle Johnson, Daryl Johnson, Nadine Francis, Barbara Francis, Roxanne Sylvester, Ralph Rand, and "other individuals who stopped paying rent" does not warrant relief because it is entirely lacking in factual detail and support.  See Pio, 2014 WL 4384314; Martel, 2017 WL 1289315 at *7.  In sum, Petitioner has not demonstrated Mr. Portz rendered ineffective assistance in his cross-examination of any government witnesses, and her Ground Eight claims should be denied.

33

### 8.      Ground Nine

In Ground Nine, Petitioner claims Mr. Portz was ineffective at sentencing by failing to challenge the probation officer's victim loss calculation, and by failing to present character witnesses in mitigation.  (Doc. no. 1, p. 32.)

First, Petitioner alleges she provided Mr. Portz with "185 separate exhibits, both on CD and hard copies" to refute the government's loss figures, but that Mr. Portz failed to incorporate these figures in his preparation for sentencing.  (Doc. no. 1, p. 32.)  Contrary to her claims, the record reflects Mr. Portz utilized Petitioner's figures in raising his objections to the total loss amount in the PSI and to the loss amount presented at sentencing.  (CR 112-204, doc. no. 114, pp. 4-6.)  At sentencing, Mr. Portz objected to the probation officer's loss calculation, arguing for a $250,000 reduction in the numbers.  (Id. at 8.)  Mr. Portz also argued the probation officer's loss calculation was not independently verified.

In rebuttal, the probation officer outlined the steps he made to investigate each loss, which included personal contact, email, and trial testimony.  (Id. at 11.)  In overruling Mr. Portz's objection, Chief Judge Hall determined the loss amounts presented in the PSI were established by a preponderance of the evidence, and were correct.  (Id. at 12.)  Chief Judge Hall noted that even if Petitioner's figures were used and the total loss amount was reduced by $250,000, the sixteen point enhancement would still apply because the total loss amount still exceeded one million.  (Id. at 8-9.)  Thus, Petitioner has failed to demonstrate prejudice and Mr. Portz did not render ineffective assistance.

Second, Petitioner argues Mr. Portz was ineffective for failing to present character witnesses in mitigation.  The failure to investigate mitigating circumstances may constitute

34

ineffective assistance.   Lightbourne v. Dugger, 829 F.2d 1012, 1025 (11th Cir. 1987). However, "counsel has no absolute duty to present mitigating character evidence at all," and "trial counsel's failure to present mitigating evidence is not per se ineffective assistance of counsel."   Bolender v. Singletary, 16 F.3d 1547, 1557 (11th Cir. 1994) (internal quotations omitted); Waters v. Thomas, 46 F.3d 1506, 1510-11 (11th Cir. 1995) ("[We] have held counsel's performance to be constitutionally sufficient when no mitigating evidence at all was introduced"); Stanley v. Zant, 697 F.2d 955, 961-62 (11th Cir. 1983).

Here, Petitioner merely asserts the conclusory allegation counsel was ineffective for "fail[ing] to present character witnesses" in mitigation.  (Doc. no. 1, p. 32.)  First, Mr. Portz was not required to present any character witnesses.   See Bolender, 16 F.3d at 1557. Secondly, Petitioner does not identify what character witnesses could have been called, or what any purported witness would have said.  (See doc. no. 1, pp. 32-33.)  Petitioner's naked assertion Mr. Portz should have called character witnesses is woefully insufficient to show deficient performance.  See Wilson, 962 F.2d at 998.

More significantly, Petitioner cannot demonstrate prejudice because she has not demonstrated a reasonable probability her sentence would have been different had Mr. Portz called character witnesses in mitigation.  When prompted to present her own statements in mitigation, Petitioner defiantly proclaimed her innocence.  (CR 112-204, doc. no. 114, pp. 63-100.)  Instead of accepting responsibility for her actions, Petitioner blamed others for her prosecution, including her "so called victims," and claimed she had a "clear conscience." (Id.)  Chief Judge Hall found Petitioner's lack of remorse troubling, equated Petitioner's actions to those of a "land pirate," and opined Petitioner's scheme was "one of the most

35

disgraceful" that he had ever seen. (Id. at 101-03.) Consequently, given the overwhelming aggravating factors, there is no reasonable probability that had Mr. Portz introduced character witnesses in mitigation, the outcome of sentencing would have been different. Petitioner has failed to demonstrate Mr. Portz was ineffective at sentencing.

In sum, Petitioner's contentions in Grounds One through Nine fail to demonstrate Mr. Portz was ineffective and she is not entitled to relief on any claim.

## III. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** the § 2255 motion be **DENIED** without an evidentiary hearing, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of Respondent.

SO REPORTED and RECOMMENDED this 19th day of July, 2017, at Augusta, Georgia.

_____
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA